UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHARLES T. MUNDEN,<br><br>               Plaintiff,<br><br>  -against-<br><br>GOODRICH PETROLEUM CORPORATION, WALTER G. GOODRICH, ROBERT C. TURNHAM JR., RONALD F. COLEMAN, K. ADAM LEIGHT, TIMOTHY D. LEULIETTE, JEFFREY S. SEROTA, EDWARD J. SONDEY, and THOMAS M. SOUERS,<br><br>               Defendants. | Case No.: 21-cv-3123<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Charles T. Munden ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Goodrich Petroleum Corporation ("Goodrich" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Goodrich, the "Defendants") for their violations of Sections 14(d)(4) and 14(e) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), respectively, and United States Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9 ("Rule 14d-9"). Plaintiff's claims arise in connection with the proposed tender offer ("Tender

1

Offer") by Paloma Partners VI Holdings, LLC ("Parent"), through its subsidiary Paloma VI Merger Sub, Inc. ("Purchaser," and collectively with Parent, "Paloma"), to acquire all of the issued and outstanding shares of Goodrich (the "Proposed Transaction").

2. On November 22, 2021, Goodrich entered into an agreement and plan of merger, (the "Merger Agreement"), whereby shareholders of Goodrich common stock will receive $23.00 in cash for each share of Goodrich common stock they own (the "Offer Price" or "Merger Consideration").

3. On or about November 29, 2019, in order to convince Goodrich's shareholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the Securities and Exchange Commission ("SEC"). In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) the sales process; (ii) the fairness opinion and financial analyses performed by the financial advisors to the Company, Tudor, Pickering, Holt & Co. ("TPH" or the "Financial Advisors"); and (iii) certain financial projections prepared by Goodrich and relied upon by the Financial Advisors.

4. The Tender Offer is scheduled to expire one minute after 11:59 p.m., Eastern Time, on December 22, 2021 (the "Expiration Date"). It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's shareholders prior to the forthcoming Expiration Date so they may make an informed determination on whether to tender their shares.

5. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from closing the Tender Offer or taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Goodrich's

shareholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391 as Plaintiff alleges violations of Sections 14(d)(4) and 14(e) of the Exchange Act.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

8.      Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, the Company has appointed a registered agent for service of process in this District, rendering venue in this District appropriate. *See, e.g., Young v. Armstrong World Industries*, 601 F. Supp. 399, 401 (N.D. Tex. 1984).

## PARTIES

9.      Plaintiff is, and has been continuously throughout all times relevant hereto, the

owner of Goodrich common stock.

10. Defendant Goodrich is a Delaware corporation and maintains its principal executive office at 801 Louisiana, Suite 700, Houston, Texas 77002. Goodrich is an independent exploration and production company engaged in the exploitation, development, and production of natural gas and crude oil primarily in the Haynesville Shale in North Louisiana and East Texas, the Tuscaloosa Marine Shale in Eastern Louisiana and Southwester Mississippi, and the Eagle Ford Shale trend in South Texas. The Company's common stock trades on the New York Stock Exchange under the ticker symbol "GDP."

11. Defendant Walter G. Goodrich ("Goodrich") is, and has been at all relevant times, the Chief Executive Officer and Chairman of the Board of Directors of the Company.

12. Defendant Robert C. Turnham, Jr. ("Turnham") is, and has been at all relevant times, the President and Chief Operating Officer, and a director of the Company.

13. Defendant Ronald F. Coleman ("Coleman") is, and has been at all relevant times, a director of the Company.

14. Defendant K. Adam Leight ("Leight") is, and has been at all relevant times, a director of the Company.

15. Defendant Timothy D. Leuliette ("Leuliette") is, and has been at all relevant times, a director of the Company.

16. Defendant Jeffrey S. Serota ("Serota") is, and has been at all relevant times, a director of the Company.

17. Defendant Edward J. Sondey ("Sondey") is, and has been at all relevant times, a director of the Company.

18. Defendant Thomas M. Souers ("Souers") is, and has been at all relevant times, a

director of the Company.

19.    The defendants identified in paragraphs 11-18 are collectively referred to as the "Individual Defendants" or the "Board."

## SUBSTANTIVE ALLEGATIONS

**A. Background and the Unfair Offer Consideration**

20.    Goodrich is a Delaware corporation and maintains its principal executive office at 801 Louisiana, Suite 700, Houston, Texas 77002.  Goodrich is an independent exploration and production company engaged in the exploitation, development, and production of natural gas and crude oil primarily in the Haynesville Shale in North Louisiana and East Texas, the Tuscaloosa Marine Shale in Eastern Louisiana and Southwester Mississippi, and the Eagle Ford Shale trend in South Teaxs.  The Company's common stock trades on the New York Stock Exchange under the ticker symbol "GDP."

21.    Prior to the announcement of the Proposed Transaction, Goodrich had excellent growth prospects.  For example, on November 4, 2021, Goodrich issued a press release entitled *Goodrich Petroleum Announces Third Quarter 2021 Financial Results* along with an accompanying Management Presentation, which boasted Goodrich's "Cash Flow Generation With Strong Balance Sheet, Superior Rates of Return and Low Trading Multiple Creates an Attractive Entry Point for the Stock," "12+ Year Inventory on Core Haynesville Position Provides ~2.37 Tcf of Resource Potential on Acreage Predominantly Held by Production," and stated that Goodrich had "Potential for Top Tier Growth and Free Cash Flow Yield." STRONG COMPANY RETURNS" and "PROVED RESERVES," providing guidance indicating that Goodrich's production would continue to increase through 2021 and 2022.

22. Thus, the Proposed Transaction comes at a time when the Company's recent and future success was not fully reflected by its share price. The Proposed Transaction will cash-out Goodrich's stockholders at a price that fails to adequately compensate them for the intrinsic value of their shares.

23. Despite Goodrich's intrinsic value and exceptional growth prospects, the Individual Defendants are agreeing to sell the Company and deprive its stockholders of the ability to partake in the Company's future growth. The Individual Defendants breached their fiduciary duties owed to the Company's stockholders by agreeing to the Proposed Transaction for the unfair Offer Price, and by allowing the unfair and flawed sales process to unfold in the manner that it did, which has caused Plaintiffs and the Company's other public shareholders to receive an inadequate Offer Consideration.

**B.**    **The Proposed Transaction**

24. On November 22, 2021, Goodrich announced the Proposed Transaction in a Press Release, which stated, in part:

> Paloma Partners to Acquire Goodrich Petroleum Corporation for $23.00 Per Fully Diluted Share for a Total of Approximately $480 Million, Including Assumption of the Company's First Lien Debt
>
> HOUSTON, Nov. 22, 2021 / PRNewswire/ -- Goodrich Petroleum Corporation (NYSE American: GDP) ("Goodrich" or the "Company") today announced that it has entered into a definitive merger agreement pursuant to which a subsidiary of Paloma Partners VI Holdings, LLC ("Paloma" and such subsidiary, "Merger Sub"), an affiliate of EnCap Energy Capital Fund XI L.P. ("EnCap"), will commence a tender offer to acquire all of Goodrich's outstanding common shares for $23.00 per share in cash.
>
> The offer price in the transaction, which has been unanimously approved by Goodrich's Board of Directors, represents an approximate 7 percent premium to Goodrich's closing

price on November 19, 2021, and a 47 percent premium to its year-to-date volume-weighted average price.

### Transaction Structure

Certain stockholders of Goodrich have entered into tender and support agreements pursuant to which those stockholders have agreed to tender their Goodrich shares pursuant to the tender offer. The supporting stockholders and Paloma own, after giving effect to conversion of certain convertible notes, a majority of the outstanding shares of Goodrich common stock. Accordingly, the tender offer is expected to be completed successfully and followed promptly by a second-step merger pursuant to which any remaining shares will be converted into the right to receive the price paid in the tender offer.

Goodrich intends to file a Schedule 14D-9 following the commencement of the tender offer, which will include the unanimous recommendation by its Board of Directors that Goodrich's stockholders tender their shares in the offer.

### Closing; Financing

The tender offer will be subject to customary conditions, including the tender of a majority of the outstanding Goodrich shares pursuant to the offer, and is expected to close in December 2021. The transaction is not subject to a financing condition. Paloma has secured from EnCap equity financing commitments for the entire acquisition, including assumption of debt, to complete the transaction.

Upon the completion of the transaction, Goodrich will become a privately held company and shares of Goodrich common stock will no longer be listed on any public market.

### Advisors

Tudor, Pickering, Holt & Co. is serving as financial advisor to Goodrich and Vinson & Elkins L.L.P. is serving as Goodrich's legal advisor. Greenhill & Co. is serving as financial advisor to Paloma and Hunton Andrews Kurth LLP is serving as Paloma's legal advisor.

25.     Rather than continuing to build upon Goodrich's prospects, the Merger Consideration being offered to Goodrich's public shareholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Goodrich common stock is materially in excess of the amount offered given the Company's recent financial performance and its prospects for future growth and earnings.

### C. The Preclusive Deal Protection Devices

26. To the detriment of Goodrich shareholders, the Individual Defendants agreed, in the Merger Agreement, to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and all but ensure that the Proposed Transaction is consummated and that no competing offers emerge for the Company.

27. The Merger Agreement contains a restrictive no-shop provision that prohibits the members of the Board from soliciting proposals relating to alternative offers or business combinations.

28. The no-shop provision also prohibits, except under extremely limited circumstances, the Individual Defendants from engaging in discussions or negotiations relating to unsolicited proposals regarding alternative acquisitions or business combinations.

29. Further, the Board must provide Paloma with written notice of any Acquisition Proposal and must provide prior written notice of its intention to terminate the Merger Agreement in favor of any Superior Proposal so that Paloma has the opportunity to adjust the terms and conditions of the Merger Agreement so that the Acquisition Proposal ceases to be a Superior Proposal.

30. Moreover, the Board effectively undermined the ability of any potential suitor to make a Superior Proposal by agreeing in advance to Tender and Support Agreements pursuant to which many of Goodrich's largest stockholders have already agreed to tender their shares to Paloma, with LS Power Development, LLC ("LS Power") and Defendant Sondey, LS Power's Senior Managing Director of Private Equity, having agreed to the LS Power Purchase Agreement, a side transaction pursuant to which LS Power has already sold to Paloma **1,838,510 shares**, *i.e.,* almost 13% of the Company's outstanding stock.

31. In addition, the Merger Agreement provides that the Company will be required to pay a termination fee of $15,000,000.00 with respect to any termination under the no-shop provisions.

32. Ultimately, these preclusive deal protection devices restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The aggregate effect of these preclusive deal protection devices, viewed in light of the materially inadequate consideration offered for Goodrich shares in the Proposed Transaction, supports an inference that the Board was not acting in good faith in approving the terms of the Merger Agreement.

33. Accordingly, Plaintiffs seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

D. **The Recommendation Statement Omits Certain Material Information**

   (i) **The Recommendation Statement Contains Materially False Statements and Omissions Regarding the Background of the Offer**

34. The Recommendation Statement describes the effect of onset of the Covid-19 pandemic in March 2020, states that the Company began evaluating further bolt on acquisition opportunities in spring 2020, and discloses that the Company entered into a confidentiality agreement with Company A in July 2020. However, the Recommendation Statement fails to disclose that Mark E. Ferchau, Goodrich's then-Executive Vice President, ceased his role as an employee or named executive officer at Goodrich after 18 years of service on Goodrich's management team. This change in management and leadership almost immediately before Goodrich entered into a confidentiality agreement at the beginning of a sales process is unquestionably material to Goodrich's public investors.

9

35. Further the Recommendation Statement fails to disclose whether any of the confidentiality agreements that Goodrich entered with potential counterparties other than Company D and Company E included "Don't Ask, Don't Waive" ("DADW") provisions, and if so, whether such standstill obligations remain in effect. Indeed, it appears that at least some potential counterparties' standstill obligations may remain in place. *Compare* Recommendation Statement at 23 (noting that a draft merger agreement would have permitted Goodrich to waive standstill obligations owed by third parties "in certain situations"), with Merger Agreement at 54 (stating that Goodrich shall not "grant any waiver or release under (or fail to use reasonable best efforts to enforce) any standstill or similar agreement").

36. The Recommendation Statement also fails to identify Defendant Sondey's role in the negotiation of the LS Power Purchase Agreement, including the extent (to any) to which Defendant Sondey recused himself from negotiations.

**(ii) The Recommendation Statement Contains False Statements and Omissions Related to the Management Projections and the Fairness Opinion**

37. The Recommendation Statement also omits material information regarding the Company's Financial Advisors' Fairness Opinion and the various valuation analyses that the Company's Financial Advisors performed to render the opinion because it does not provide enough information regarding the necessary data, support for conclusions, or the existence of, or basis for, the underlying assumptions that underpin the fairness opinion. Specifically, the Recommendation Statement does not disclose enough information regarding the financial projections, inputs and assumptions for various financial valuations, and the Financial Advisors' potential conflicts of interest. Without this information, stockholders cannot replicate the analyses, confirm the valuations, evaluate the Financial Advisors' opinion that the Offer Price is fair, or accurately assess the reliability of the Fairness Opinion. The informative value of the Fairness Opinion is not in its

conclusions, but in the valuation analyses that support them. Thus, the key inputs, which are intrinsically baked into those conclusions, must also be fairly disclosed.

38. With respect to the management projections, the Recommendation Statement fails to disclose material information. With respect to these financial projections, directors are obligated to provide complete valuation metrics to shareholders, particularly in cash-out transactions where non-GAAP metrics were used by the banker, since such metrics are not uniformly defined and shareholders are therefore unable to assess the utility and legitimacy of the actual metrics without seeing the underlying components.

39. With respect to the Projected Financial Information, the Recommendation Statement fails to provide all of the financial projections relied upon by the Financial Advisors for purposes of the fairness analyses. Specifically, the Recommendation Statement does not provide projections for (i) Interest expense, (ii) Income and similar tax, (iii) Depreciation, depletion, and amortization, (iv) Share-based compensation expense, and (v) Impairment of oil and natural gas properties.

40. The Recommendation Statement also omits material information regarding the Financial Advisors' Fairness Opinion and the various valuation analyses performed to render that opinion. The description of the Fairness Opinion fails to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.

41. With respect to TPH's *Selected Public Companies Trading Analysis* beginning on page 31, the Recommendation Statement fails to disclose the total enterprise value for the selected companies. Without this information, it is impossible for the Company's public shareholders to know whether the *Selected Public Companies Analysis* undervalues Goodrich because it relies on multiples of companies that are not actually comparable. *See, e.g., In re PNB Hldg. Co. S'holders*

*Litig.*, 2006 Del. Ch. LEXIS 158, 2006 WL 2403999, at *25 n.125 (Del. Ch. Aug. 18, 2006) (rejecting comparable companies analysis where the "comparable publicly-traded companies all were significantly larger than [the subject company], with one having total assets of $587 million as compared to [the subject company's] assets of $216 million").

42. With respect to TPH's *Selected Transactions Analysis* beginning on Page 33, the Recommendation Statement fails to disclose: (i) the total enterprise value implied by each transaction, and (ii) the rationale and basis TPH employed in selecting the range of multiples, including whether TPH considered certain transactions more relevant.

43. With respect to TPH's *Net Asset Value Analysis* beginning on Page 34, the Recommendation Statement fails to disclose: (i) the rationale and basis for selecting a discount rate range of 13.50% to 17.50%, (ii) all material information regarding the Company's assumptions respecting the future cash flows expected to be generated by the Company's assets through the end of their economic lives, and (iii) a full sensitivity table based on the entire range of discount and growth rates for each set of assumptions.

44. With respect to TPH's *Discounted Cash Flow Analysis* beginning on Page 34, the Recommendation Statement fails to disclose: (i) the rationale and basis for selecting a discount rate range of 13.50% to 17.50%, (ii) the rationale and basis for selecting a range of terminal EBITDA multiples of 1.50x to 3.00x, which appears to dramatically undervalue the Company relative to the EBITDA multiples actually observed in the market as described in the *Selected Public Companies Trading Analysis*, and (iii) a full sensitivity table based on the entire range of discount and growth rates for each set of assumptions.

45. The Recommendation fails to disclose the actual amount of aggregate fees that TPH has received or expects to receive in connection with services performed for Paloma affiliates

during the past two years, stating only that such fees "totaled less than 1% of annual firm revenue for each of the last two (2) years."

## COUNT I
### (Against All Defendants for Violation of Section 14(e) of the Exchange Act)

60. Plaintiff incorporates each and every allegation set forth as if fully set forth herein.

61. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

62. Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the Tender Offer. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

63. The Recommendation Statement was prepared, reviewed, and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to shareholders via the Tender Offer and the intrinsic value of the Company.

64. In doing so, Defendants made untrue statements and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e). The Individual Defendants were

therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

65. The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares. In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to shareholders.

66. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

67. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiffs, and Plaintiffs will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Date.

## COUNT II
**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9)**

68. Plaintiff incorporates each and every allegation set forth as if fully set forth herein.

69. Defendants have caused the Recommendation Statement to be issued with the

intention of soliciting shareholder support of the Proposed Transaction.

70.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

71.     SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

72.     In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

73.     The omission of information from a recommendation statement will violate Section 14(d)(4) and Rule 14d-9 if other SEC regulations specifically require disclosure of the omitted information.

74.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, that render the Recommendation Statement misleadingly incomplete. Defendants knowingly or with deliberate recklessness omitted the

material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

75.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiffs, and Plaintiffs will be deprived of her right to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Date.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or taking any steps to consummate the Proposed Transaction, until the Company discloses the material information discussed above which has been omitted from the Recommendation Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 15, 2021                **ADEMI LLP**

By: */s/ John D. Blythin*
John D. Blythin (Wis. SBN 1046105)
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel: 414-482-8000
Fax: 414-482-8001
Email: jblythin@ademilaw.com


*Attorneys for Plaintiff*

**OF COUNSEL:**

**ADEMI LLP**
Guri Ademi
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel: (414) 482-8000
Fax: (414) 482-8001
Email: gademi@ademilaw.com